IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 3:08MJ45 |
| Plaintiff, | ) | FEBRUARY 28, 2008 |
| | ) | |
| vs | ) | |
| | ) | |
| JEANNETTE TYE RUNYON, | ) | |
| | ) | |
| Defendant. | ) | |

_____/

TRANSCRIPT OF ELECTRONICALLY-RECORDED
INITIAL APPEARANCE

BEFORE THE HONORABLE CARL HORN, III
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

FOR THE UNITED STATES        MARK ODULIO, ESQ.
                             U. S. Attorney's Office
                             227 W. Trade Street
                             Suite 1700
                             Charlotte, NC 28202


FOR THE DEFENDANT            EMILY MARROQUIN, ESQ.
                             Federal Defenders of WNC
                             277 W. Fourth Street
                             Charlotte, NC 28202


Proceedings digitally recorded and transcript prepared by:

JOY KELLY, RPR, CRR
U. S. Official Court Reporter
Charlotte, North Carolina
704-350-7495

```
 1              (Hearing commenced 11:09:52 a.m.)

 2              THE COURT:  Tell me your name, ma'am.

 3              THE DEFENDANT:  Jeannette Tye Runyon.

 4              THE COURT:  Okay.  And is your address 686 South

 5   Happy Hill in Lexington?

 6              THE DEFENDANT:  Yes, it is.

 7              THE COURT:  You have been charged in a criminal

 8   complaint with making a false statement in a passport and

 9   using a false Social Security number.

10              THE DEFENDANT:  False Social Security number?

11              THE COURT:  Yes.  I think we have 408-86 -- let me

12   just summarize the affidavit, the factual allegations.

13              Passport fraud and Social Security fraud are the

14   two charges.  The charges would carry a ten-year maximum

15   term of imprisonment and a fine of up to $250,000.

16              It's alleged specifically that on November 5th,

17   2007, that you identified yourself as Jeannette T. Runyon at

18   the U. S. Embassy at Kiev in the Ukraine, and attempted to

19   obtain a U. S. passport and Social Security number for a

20   three-week old infant claiming the child was your child.

21              You supplied at that time allegedly an Ukrainian

22   birth certificate listing this child, you as the mother and

23   Lawrence Woolslayer as the father.  You signed the form.

24   These are all allegations.

25              It's alleged that, in fact, you arrived in the
```

1    Ukraine two days after the child was born.  And it was later

2    learned that the child was conceived clinically from the

3    sperm and egg donated by anonymous donors, carried to term

4    by a surrogate mother in the Ukraine.  And it was learned

5    that you had paid approximately $30,000 to adopt this child.

6    And then there's an allegation about some communication

7    through the Internet to others involved in the group that

8    they shouldn't use this clinic.

9         All right.  Those are the factual allegations.

10   It's a criminal complaint.  It comes out of the Middle

11   District of North Carolina.  And I understand from

12   Mrs. O'Brien that this gentleman in the courtroom is an

13   attorney, and your name is Bree Egor (ph).

14        MR. CASINI:  No.  My name is Mr. Casini.  I work

15   with MK Law (ph).  Bree Egor (ph) is actually my father.

16        THE COURT:  Okay.  What is your name again?

17        MR. CASINI:  Mr. Casini.

18        THE COURT:  Casini.

19        MR. CASINI:  Casini.

20        THE COURT:  Spell that for me.

21        MR. CASINI:  Sorry.  C-A-S-I-N-I.

22        THE COURT:  C-A-S-I-N-I.  Casini.

23        MR. CASINI:  Correct.

24        THE COURT:  Now, where do you practice, sir?

25        MR. CASINI:  Currently in the Ukraine.  I

1    previously practiced in the United Kingdom.

2              THE COURT:  So you are a Ukrainian lawyer?

3              MR. CASINI:  Correct.

4              THE COURT:  All right.  And what would you like to

5    say?

6              MR. CASINI:  I'd first like to explain the facts

7    of the case to you in relation to the Ukraine.  It might

8    well help Mrs. Runyon's defense.

9              THE COURT:  Okay.  Well, she's charged in another

10   district, not here.  This is an initial appearance.

11             Let me turn to the government at this point and

12   ask what is the government's position on whether Ms. Runyon

13   should be returned in custody or out of custody to the

14   Middle District?

15             MR. ADULIO:  Oh, Your Honor, our position is that

16   she should be held in custody and -- returned in custody.

17             THE COURT:  Okay.

18             MR. ADULIO:  The agents supporting that -- and I

19   don't know who this gentleman is, and obviously he's

20   indicating he's licensed in the Ukraine --

21             THE COURT:  The Ukraine.  Right.

22             MR. ADULIO:  Our information with the agent

23   from -- embassy in UK is that this gentleman was disbarred

24   in the UK.

25             MR. CASINI:  Correct.

THE COURT: He says that's correct.

MR. ADULIO: So -- okay.

THE COURT: So the government is moving for detention. Anything further?

What else do we know about this case relevant to that, and particularly whether it would be best for Ms. Runyon to have her hearing here in our district or back in the Middle District in terms of her roots, one place or the other?

MR. ADULIO: Well, certainly I think, as the Court has set forth, she has an option to do it in either place. Information is she resides in Lexington, North Carolina. So that may very well be a more appropriate venue for her to seek the relief that she's seeking.

As the complaint sets forth, the charges are passport fraud and Social Security fraud. But as the Court has set forth, the underlying the facts of this case involve a three-week old infant and trying to obtain that infant in the Ukraine with false information and false documents.

So although again the charges are passport fraud and Social Security fraud, the government's position is this involves a baby, a three-week old baby, and this particular person proffering false, fraudulent, bogus information to the authorities.

THE COURT: Well, people go to the Ukraine all the

1    time to adopt children.  What -- this is a little unusual is

2    that it was a clinically created child and a surrogate

3    mother, but no -- it wasn't like she stole the baby.  I

4    mean, maybe those are not legal to do in the Ukraine.  They

5    certainly are legal in the United States.  People do that.

6            MR. ADULIO:  Your Honor, I'm not sure at this

7    point there are facts one way or the other about the origins

8    of that child.  Whether or not the child was stolen, I mean

9    there's no allegation in the complaint, but I think what I'm

10   trying to raise is that because of the age of that child,

11   certainly that may have been a possibility.

12           What we're saying is, Your Honor, she did provide

13   false information to the consular official.  She provided

14   false documents.  Certainly inherent in that is I think --

15   raises a spectrum of her credibility, her likelihood of

16   complying with, I think, and submitting to the jurisdiction

17   of this Court, and complying with the Court order.

18           So given the posture of this sensitive nature of

19   these facts and the seriousness of the charges therein, the

20   strength of the government's evidence, you know, that's why

21   we're moving for detention.

22           THE COURT:  Right.  We certainly won't decide that

23   today.  It will be decided next week.

24           MR. ADULIO:  Yes, sir.

25           THE COURT:  Or in the Middle District if she

1    elects to go back and have a hearing there.

2              Do we know anything about her citizenship status?

3    Is she a U. S. citizen?

4              MR. ADULIO:  Your Honor, the agent is advising me

5    that -- and by the way, the agent's name is Mark Richardson

6    from the Department of State -- is advising that the

7    defendant is a joint U. S. and UK citizen, but born in

8    California -- or born in New York.

9              THE COURT:  Okay.  All right.  Now, Mr. Casini,

10   you say you were disbarred in the United Kingdom?

11             MR. CASINI:  No, I was not disbarred in the United

12   Kingdom.

13             THE COURT:  Disbarred in the Ukraine?

14             MR. CASINI:  No, I'm not disbarred.  I ceased to

15   practice in the United Kingdom.  I've never been disbarred

16   in the United Kingdom.

17             THE COURT:  Okay.  I thought you said that you

18   were.

19             MR. CASINI:  No (simultaneous conversation.)

20             THE COURT:  What else briefly would you like to

21   say for today?

22             And, again, all we're going to decide today is

23   whether she goes back to have a hearing on her release

24   closer to where she lives, in the Middle District, or

25   whether we have that hearing next week here.  We won't have

1    that determination in any event.

2            MR. CASINI:  I understand.  I'm not looking for

3    that at all.  Actually, what I'm saying to you is I

4    actually, in the Ukraine, persuaded her to come back to the

5    U. S.  (inaudible) consulate fully on her behalf.

6            I will also tell you the clinic, Aceda (ph),

7    produced the documents.  Mrs. Runyon did not know the

8    documents were falsified.

9            I don't know if you know anything about the

10   conditions in Ukraine, Your Honor.  I'm sure you don't.

11   It's extremely easy to falsify documents.  This clinic is a

12   an extremely powerful organization.  The child is now with

13   deputy mayor of Kiev.  It's an extremely sensitive issue.

14   There was never an attempt to steal the child.

15           THE COURT:  The child is where?

16           MR. CASINI:  With the deputy mayor of Kiev.

17           THE COURT:  The deputy mayor of Kiev.

18           MR. CASINI:  Yes.

19           THE COURT:  Okay.  This is all very intriguing.

20           MR. ADULIO:  Your Honor, the information I'm

21   getting is contrary to what's proffered by that gentleman.

22   Arrangements for her to leave Kiev was made entirely by the

23   United States Government, and --

24           THE COURT:  We're getting ahead of ourselves here.

25   We probably need to wind up and decide -- Ms. Marroquin,

what do you think is in her best interest in terms of
whether we schedule our hearing here next week or schedule
it in the Middle District when she can be taken there?

THE DEFENDANT:  No.  No.

MS. MARROQUIN:  Your Honor, it's my understanding
that her family, her ties are in Lexington.  She's lived
there for a few years.  It might be best to hold the hearing
there.  Unfortunately, it's been sort of difficult to talk
to my client, rushing to this hearing.

I don't know that I heard a clear basis for the
detention by the government.  I mean, one of the bases was
in the Bail Reform Act for detention.  But assuming there
was a basis for detention, it's seems that the client would
like to proceed in Lexington with a detention hearing.

THE COURT:  Okay.  What would be the statutory
basis for detention?

MR. ADULIO:  3142(F)(2), I believe, Your Honor,
risk of flight and a danger to the community.  It wouldn't
be -- obviously it's not a presumption case.  We'd proceed
on those grounds.

THE COURT:  Okay.  Let's -- I'm satisfied that we
have enough to schedule a hearing next week before
Judge Keesler.  And if upon further looking into this you
think there's not a basis for detention, or even a detention
hearing, I'll let you raise that with Judge Keesler.

1   MS. MARROQUIN:  Thank you, Your Honor.  That would

2   be helpful, and we can clarify at that time.

3   THE COURT:  I'm sorry, I misspoke.  We're not

4   going to have a hearing before Judge Keesler.  I think you

5   said you wanted her to -- we'll let her preserve the right

6   to raise that issue when she goes before the magistrate

7   judge in either Greensboro or Winston-Salem in the Middle

8   District.

9   MS. MARROQUIN:  That would be fine, Your Honor.

10  Thank you.

11  THE COURT:  And since she's not contesting her

12  identity, we'll ask her to sign a piece of paper saying she

13  is Jeannette Tye Runyon.

14  (Hearing concluded at 11:23:12 a.m.)

15  - - - - - -

16  **UNITED STATES DISTRICT COURT**
    **WESTERN DISTRICT OF NORTH CAROLINA**
17  **CERTIFICATE OF REPORTER**

18  I, JOY KELLY, RPR, CRR, certify that the foregoing
    is a true and correct transcription from the digitally
19  recorded proceedings transcribed by me in the above-entitled
    matter.

20

21

22

23  S/  JOY KELLY

24  **JOY KELLY, RPR, CRR**                          Date
    **U.S. Official Court Reporter**
25  Charlotte, NC